## MITCHELL STOREBUILDING CO. v. CARROLL.

(Circuit Court of Appeals, Sixth Circuit. February 13, 1912.)

No. 2,161.

1. BANKRUPTCY (§ 214*)—ASSETS—OWNERSHIP—CONTEST—WAIVER.

Where the assets of a lessee corporation were taken possession of by the bankruptcy court as a part of the bankrupt's estate, and the landlord applied in the bankruptcy proceedings for an order impounding a portion of such assets to satisfy its claim arising out of the lease, the landlord thereby waived its right to object that the assets of the tenant so taken were not properly in the possession of the trustee in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 324–327; Dec. Dig. § 214.*]

2. BANKRUPTCY (§ 391*)—PROCEEDINGS IN STATE COURT—INJUNCTION—JURISDICTION.

Property of the D. Company having been taken possession of by a bankrupt's trustee as belonging to the bankrupt, petitioner, claiming certain rights as landlord under a lease to the D. Company, instituted proceedings in the state court for the liquidation of its claim to which the bankrupt's trustee was not a party. Petitioner thereafter applied to the bankruptcy court that a portion of the assets of the D. Company be impounded to satisfy any claim that it might succeed in establishing in the state court, whereupon the trustee applied to enjoin the further prosecution of petitioner's claim in the state court, where petitioner was about to obtain judgment by default. Held that, since the prosecution of the petitioner's action in the state court might interfere with and delay the settlement of the bankrupt's estate, and the bankruptcy court having obtained jurisdiction of petitioner by its application to impound, and having ample jurisdiction to determine his claim, an injunction against a further prosecution of the proceedings in the state court was

properly allowed under Bankruptcy Act July 1, 1898, c. 541, § 2, 30 Stat. 545 (U. S. Comp. St. 1901, p. 3420), providing that courts of bankruptcy have jurisdiction in law and equity to enable them to exercise original jurisdiction in bankruptcy proceedings, to make such orders, issue such process, and enter such judgments in addition to those specifically provided for as may be necessary to enforce the provisions of the act.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 391.*]

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio.

In the matter of bankruptcy proceedings of the Herman Keck Manufacturing Company. A petition of the Mitchell Storebuilding Company was filed for an order requiring the trustee, R. De V. Carroll, to set aside $6,500 from the assets of the Duhme Jewelry Company, out of which to pay an unliquidated claim under a lease to that company, the assets of which belong to the bankrupt. The petitioner having been made a party to the bankruptcy proceedings, the trustee prayed an injunction restraining it from prosecuting its suit in a state court on the lease pending the settlement of the bankrupt's estate. From an order allowing a temporary injunction, petitioner appeals. Affirmed.

February, 1909, an involuntary petition in bankruptcy was filed in the District Court for the Southern District of Ohio against the Herman Keck Manufacturing Company, a corporation, and at the same time a receiver was asked by the petitioning creditors of the alleged bankrupt for the property and assets of the Duhme Jewelry Company, a corporation, on the ground that the latter company was a mere department and adjunct of the Keck Company; all of its capital stock being owned by the alleged bankrupt, and its officers and directors being the same persons who were officers and directors in the same capacity for the Keck Company.

A receiver was appointed under these circumstances for the Duhme Company, which was admittedly solvent. Subsequently the Keck Company was adjudicated a bankrupt, and a trustee was appointed.

After a hearing upon an issue raised by appropriate pleadings, the court, June 2, 1910, found that "all of the property and assets of the Duhme Jewelry Company * * * was the property of the bankrupt * * * and is now the property of and belongs to * * * the trustee in bankruptcy of the Herman Keck Manufacturing Company," and it was ordered that the "receiver of the property and estate of the Duhme Jewelry Company forthwith turn over" to the trustee in bankruptcy of the bankrupt "all of the property and assets including cash now in his hands as such receiver, and that he keep an account thereof separate and distinct from his account of the balance of the property of said bankrupt."

The Duhme Company had occupied premises rented from the Mitchell Storebuilding Company, the appellant, a corporation, under a lease to expire December 31, 1910. June 30, 1910, by order of the court, the trustee having theretofore converted the property of the Duhme Company into money under the order just referred to, this lease was abandoned; all the rental therefor to that time having been paid.

In October, 1910, the lessor, the appellant, brought an action in the court of common pleas of Hamilton county, Ohio, against the Duhme Jewelry Company, and no other defendant, in two causes of action, to recover damages for alteration and waste in the premises and for loss of rentals occasioned by the abandonment of the lease, and at the same time the appellant applied to the District Court in the bankruptcy proceeding setting forth the fact that it had brought an action in the state court against the Duhme Jewelry Com-

pany and asking "for an order directing the trustee of the Keck Manufacturing Company, bankrupt, to withhold from the distribution of the assets of the Duhme Jewelry Company the sum of $6,500 until final judgment is rendered in said suit." An order to this effect was issued by the referee, but subsequently, on motion of the trustee, it was vacated; the Mitchell Storebuilding Company, appellant herein, appearing again before the referee in the bankruptcy proceeding with a motion to strike from the files the trustee's motion to vacate the aforesaid order of impounding. From the action of the referee in vacating the order of impounding, the appellant is prosecuting review in the District Court.

Thereupon the trustee applied by petition to the referee for an order making the Mitchell Storebuilding Company a party to the bankruptcy proceeding. The ground of this petition was that the suit of the Mitchell Storebuilding Company in the state court was a cloud upon the title and possession of the trustee of the assets of the Duhme Company and a hindrance to the speedy settlement of the bankrupt's estate, and that it was necessary for speedy and proper distribution of the assets of the estate to make the Mitchell Storebuilding Company a party to the bankruptcy proceedings. An order as petitioned for was entered and a subpœna issued and served upon the Mitchell Company and returned.

Thereupon the trustee prayed an injunction from the District Court restraining the appellant from prosecuting its suit in the state court pending the settlement of the bankrupt's estate; the Mitchell Company at that time threatening to take a judgment in the state court by default. To this application, and apparently in response to the subpœna, for it nowhere objected to the attempt to make it a party to the bankruptcy proceedings, the appellant appeared, and from an order granted therein allowing a temporary injunction this appeal is prosecuted. At no time has the trustee in bankruptcy been made a party to the proceedings in the state court.

P. L. Mitchell and W. A. De Camp (De Camp & Sutphin, on the brief), for appellant.

J. L. Lackner and J. S. Graydon (Lawrence Maxwell, of counsel), for appellee.

Before WARRINGTON and KNAPPEN, Circuit Judges, and KILLITS, District Judge.

KILLITS, District Judge (after stating the facts as above). [1] We begin the consideration of the proposition raised by the appeal with the assumption that the assets of the Duhme Jewelry Company are properly in the hands of the trustee in bankruptcy by virtue of the order of the District Court issued before the commencement of appellant's action in the state court. Were we inclined to question the right of the District Court to so dispose of the Duhme property, which we have not considered, that issue is not before us in any form and cannot be raised by appellant. It recognized the matter as closed when it voluntarily came into the District Court to ask that it might have sufficient of the assets so acquired by the court of bankruptcy impounded to meet its anticipated judgment.

The record affords the Mitchell Storebuilding Company no opportunity to controvert that, at the time it was enjoined, the res out of which it might ask for payment of any valid claim against the Duhme Company was properly in the possession of the trustee in bankruptcy. The Supreme Court, in Whitney v. Wenman, 198 U. S. 539, 552, 25 Sup. Ct. 778, 781 (49 L. Ed. 1157), say:

"We think the result of these cases is, in view of the broad powers conferred in section 2 of the bankrupt act, authorizing the bankruptcy court to

cause the estate of the bankrupt to be collected, reduced to money, and distributed, and to determine controversies in relation thereto, and bring in and substitute additional parties when necessary for the complete determination of a matter in controversy, that when the property has become subject to the jurisdiction of the bankruptcy court as that of the bankrupt, whether held by him or for him, jurisdiction exists to determine controversies in relation to the disposition of the same and the extent or character of liens thereon or rights therein."

[2] The question, then, before us is whether the record suggests the existence of a controversy which may relate to the disposition of property in the custody of the bankruptcy court as belonging to the bankrupt's estate. It is conceded that the surplus of the Duhme assets above the indebtedness of this solvent corporation goes to swell the fund for distribution to the creditors of the Keck Company, and are to be distributed in the final settlement of the bankrupt's estate. The situation, then, invites consideration of section 2 of the bankruptcy act, as amended by Act Feb. 5, 1903, c. 487, 32 Stat. 797 (U. S. Comp. St. Supp. 1909, p. 1308), providing:

"That the courts of bankruptcy * * * are hereby invested * * * with such jurisdiction in law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings * * * (15) make such orders, issue such process and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this act."

On behalf of the appellant it is contended that the facts cannot be brought within this provision, and that the progress of its case to judgment in the state court cannot in any way interfere with the settlement of the bankrupt's estate. In attempting to meet this contention of the appellant, the fact must not be overlooked that the Mitchell Storebuilding Company was about to take a judgment by default, and that the injunction does nothing more than to prevent a judgment in the state court until the termination of the bankruptcy proceeding. The writ does not attempt to enjoin the final prosecution of the claim in the state court, and the inquiry is, then: What would have been the effect had the writ not been issued and a default judgment had been permitted to the appellant? Unquestionably, under these circumstances, the appellant might present a liquidated claim for the amount of its judgment and costs to the referee, who, in such event, would be compelled to meet the question of its allowance or rejection. It seems to us that the statement of this fact determines this appeal. It is obvious that the amount and extent of such possible judgment was of interest to the trustee representing the creditors, because it would affect the amount of the Duhme assets available to the payment of the claims of creditors of the bankrupt.

At the time the injunction was sought, the alternatives then before the trustee were: To suffer a suit in which he was not a party to determine in some measure the amount available to him to distribute to creditors, or to go into the state court and litigate with the appellant the amount and validity of its unliquidated claim that he might protect moneys in his hands as assets of his bankrupt. Plainly, the trustee could not be suffered to abdicate his right as a representative

of the creditors to contest this claim, and to permit him to become a party to the action in the state court not only, would be to compel the settlement of the bankrupt's estate to endure such delays as were incident to the state practice, but would be also to reverse the precedence which the bankruptcy courts, respecting matters within their jurisdiction, have over the state courts. We see in the proposition before us a common example of situations which that portion of the act quoted was designed to affect. This provision must be given a free interpretation as conveying "broad powers" upon the bankruptcy court "to cause the estate of the bankrupt to be collected, reduced to money and distributed and to determine otherwise in relation thereto, and bring in and substitute additional parties when necessary for the complete determination of a matter in controversy; that when the property has become subject to the jurisdiction of the bankruptcy court as that of the bankrupt, whether held by him or for him, jurisdiction exists to determine controversies in relation to the disposition of the same and the extent and character of liens thereon or rights therein." Whitney v. Wenman, 198 U. S. 539, 552, 25 Sup. Ct. 778, 781 (49 L. Ed. 1157); Murphy v. John Hofman Co., 211 U. S. 562, 29 Sup. Ct. 154, 53 L. Ed. 327; In re McMahon, 147 Fed. 684, 77 C. C. A. 668.

This proposition is neither peculiar to the bankruptcy practice nor dependent altogether upon the provisions of the bankruptcy act quoted above.

"When a court of competent jurisdiction has, by appropriate proceedings, taken property into its possession through its officers, the property is thereby withdrawn from the jurisdiction of all other courts. The latter courts, though of concurrent jurisdiction, are without power to render any judgment which invades or disturbs the possession of the property while it is in the custody of the court which has seized it. For the purpose of avoiding injustice which otherwise might result, a court during continuance of its possession has, as incident thereto and as ancillary to the suit in which the possession was acquired, jurisdiction to hear and determine all questions respecting the title, the possession, or the control of the property. In the courts of the United States this incidental and ancillary jurisdiction exists, although in the subordinate suit there is no jurisdiction arising out of diversity of citizenship or the nature of the controversy. Those principles are of general application and not peculiar to the relations of the courts of the United States to the courts of the states; they are, however, of especial importance with respect to the relations of those courts, which exercise independent jurisdiction in the same territory, often over the same property, persons, and controversies; they are not based upon any supposed superiority of one court over the others, but serve to prevent a conflict over the possession of property, which would be unseemly and subversive of justice." Wabash Railroad Co. v. Adelbert College, 208 U. S. 38, 54, 28 Sup. Ct. 182, 187 (52 L. Ed. 379).

The inquiry, then, is whether a default judgment or a contest in the state court might have disturbed "the possession of the property while it is in the custody of the court which has seized it"; that is, the bankruptcy court. Independent of the suggestion which we have made above on this subject, appellant answered the question for itself when it entered the bankruptcy court for the purpose of having impounded the fund. That action not only evinced an ambition to participate in

that fund, but it was of such a character as to suggest to a discreet trustee and a careful court the inadvisability of distributing the assets of the estate until it were seen that the trustee, as the representative of the Keck creditors, was protected. This, at least, involved delay in the settlement of the bankrupt's estate; wherefore the embarrassment due to the unrestrained or contested proceedings in the state court is obvious.

Appellant seems not to question that it is a party to the bankruptcy proceeding, which relation was effected, if not by its voluntary appearance with its motion to impound, certainly by its subsequent appearance to resist the application for a temporary injunction after a subpœna on it had by order of the referee been served on it upon application of the trustee to make it a party.

The right to make it a party would seem clear under section 2 (6), wherein authority is given to the court to "bring in and substitute additional persons or parties in proceedings in bankruptcy when necessary for the complete determination of a matter in controversy." Assuming, as we must, for the purposes of this case, that the adjudication of the District Court was correct in holding the Duhme Company to be merely an adjunct of the Keck Company and the Duhme Company's property to be subject to administration as part of the assets of the Keck Company, we find the appellant without protest submitting to a jurisdiction which had full power to liquidate its claim against the fund in the possession of the trustee. Its two rights of action would manifestly be urged to be within the description of provable claims against the bankrupt under section 63a, and therefore protected by the provisions of section 63b that:

"Unliquidated claims against the bankrupt may pursuant to application to the court be liquidated in such manner as it shall direct and may thereafter be proved and allowed against his estate."

That this language suffices to afford to appellant, on application to the court, an opportunity for the liquidation of its claim in a plenary action, seems to be clear.

So long, therefore, as appellant stood in a position to demand satisfaction of its claim against the Duhme Company out of the moneys in the hands of the trustee, the threatened default judgment would be an interference with the proper administration of the bankruptcy estate.

We think this temporary injunction, if not the response to a plain duty, was clearly in the exercise of a sound discretion resting in the District Court. Buffington v. Harvey, 95 U. S. 99, 24 L. Ed. 381; City of Shelbyville v. Glover, 184 Fed. 234, 238, 106 C. C. A. 376 (C. C. A. 6th Cir.).

The order appealed from will be affirmed.